UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA WILLIAMS,

                              Plaintiff,

       – against –

CITY OF NEW YORK; NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION
("HHC"); Department of Correction ("DOC")
Commissioner MARTIN F. HORN; DOC Chief of
Department CAROLYN THOMAS; DOC Deputy
Commissioner RICHARD R. WHITE; DOC Inspector
General ROBERT GIGANTE; HHC President and
Chief Executive ALAN D. AVILES; Bellevue
Hospital Executive Director LYNDA D. CURTIS;
CARL WILEY; DOC Officer "John" MORALES; and
DOC Officers JOHN DOES #1-10.

                              Defendants.

**10 Civ. \_\_\_\_\_**

**COMPLAINT**

**JURY DEMAND**



### PRELIMINARY STATEMENT

1.      This is a civil rights action brought by plaintiff Andrea Williams  ("Ms.

Williams" or "plaintiff") for damages pursuant to 42 U.S.C. § 1983,  the United States

Constitution, New York City Administrative Code 8-904, the New York Constitution, and New

York common law.  While in the custody of the New York City Department of Correction

("DOC" or "the Department"), and detained at two different facilities, Ms. Williams, a

transgender woman, was sexually assaulted by two different employees of the Department and/or

the New York City Health and Hospitals Corporation ("HHC"), on two different occasions, as

corroborated by forensic evidence.   Despite credible, specific evidence that both of her attackers

presented a threat to her, and other transgender inmates more generally, neither DOC nor HHC

1

did anything to prevent these men from subjecting Ms. Williams to disgusting, degrading, and humiliating sexual abuse.

2.    Ms. Williams was first assaulted while in the custody of DOC at Bellevue Hospital's prison ward by Defendant Carl Wiley, an employee of the City and/or DOC and/or HHC. Wiley, entrusted with Ms. Williams's care, repeatedly entered Ms. Williams's room and twice forced Ms. Williams to perform oral sex upon him - taking advantage of DOC staff's negligence in monitoring the ward. The City and HHC were aware of the danger posed to Ms. Williams by Mr. Wiley, as he had previously engaged in an inappropriate sexual relationship with a patient, at a different HHC-operated hospital. Mr. Wiley has pleaded guilty to a charge of a criminal sexual act in the third degree, an "E" felony, in New York County Supreme Court, for his assault of Ms. Williams.

3.    Incredibly, DOC allowed Ms. Williams to be sexually assaulted *again* while in DOC custody. The second attack on Ms. Williams occurred at the Metropolitan Detention Center ("MDC"), a DOC facility, after she registered complaints about inappropriate sexual harassment and misconduct by DOC employee Corrections Officer Morales ("Morales"). Despite her complaints, DOC took no action; to the contrary, DOC officials continued to assign Morales to situations where he would be alone with Ms. Williams.  Just a few weeks after her complaints, Morales took advantage of one such situation. While escorting Ms. Williams back to her cell, Morales cornered Ms. Williams in a stairwell and brutally forced Ms. Williams to perform oral sex upon him. DNA evidence confirms this heinous attack by Morales.

4.    As a result of these attacks, Ms. Williams suffered physical and significant emotional injuries.

5.      Ms. Williams now seeks redress against the individual employees who assaulted her, supervisory employees who had actual notice of, and demonstrated a deliberate indifference to, the likely harm, and their employers, the City of New York and/or HHC.

## JURISDICTION AND VENUE

6.      This action arises under the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, the New York Constitution, New York City Administrative Code 8-904, and New York common law.

7.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

8.      The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

9.      This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

10.      Plaintiff demands trial by jury in this action.

## PARTIES

11.      Andrea Williams is a transgender person, who appears and presents as female.  She is a citizen of the United States and was in the custody of DOC at the time these events occurred.  At the time of the first sexual assault, Ms. Williams was detained at the Bellevue Hospital Prison Ward.  At the time of the second sexual assault, Ms. Williams was detained at the Metropolitan Detention Center.  Ms. Williams is no longer in the custody of DOC.

12.     Defendant City of New York ("City") is a municipal corporation which, through DOC, operates a number of detention facilities, including the Prison Ward at Bellevue Hospital and the MDC.  DOC, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the reporting and investigation of sexual assault and misconduct by staff and prospective employees. In addition, senior officials in DOC are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy.  These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten DOC policies or customs.  DOC is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the DOC defendants referenced herein, as well as personnel at DOC facilities at city-owned hospitals, such as Bellevue.

13.     Defendant the New York City Health and Hospitals Corporation ("HHC") is a New York public benefit corporation created pursuant to New York Unconsolidated Laws §§ 7381, *et seq.*  HHC owns and, along with defendant City, operates Bellevue Hospital.  Through its senior officials at the central office, in each facility, and in its specialized units, HHC promulgates and implements policies, including those with respect to the reporting and investigation of sexual assault and misconduct by staff and prospective employees.  HHC is also responsible for the appointment, training, supervision, and conduct of all HHC personnel, including the HHC employees referenced herein.

14.     At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his

employment as such, and acting under color of state law. On information and belief, defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn was also responsible for the care, custody, and control of all inmates housed in DOC facilities. Horn was provided on a regular basis with reports of misconduct and harassment by DOC employees, and was consistently and regularly made aware of the problems faced by transgender individuals in DOC facilities. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

15.     At all times relevant hereto, Defendant Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. As Chief of Department, she was the highest ranking uniformed member of the Department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. She was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Thomas was provided on a daily basis with reports of misconduct, abuse, or harassment in Department jails. Defendant Thomas is sued in her individual capacity.

16.     At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his

responsibilities included supervising the investigation of any and all incidents in which any employee of the Department abused or harassed any inmate, and recommending Department discipline against staff believed to have violated Department policies and rules. Defendant White was provided on a daily basis with reports of misconduct, abuse, or harassment, and other breaches of security in Department jails. Defendant White is sued in his individual capacity.

17.     At all times relevant hereto, defendant Robert Gigante was the Inspector General of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. As Inspector General, his responsibilities include the investigation and reference for prosecution of DOC employees engaged in unlawful, unethical, or corrupt conduct. Defendant Gigante is sued in his individual capacity.

18.     Defendants Horn, Thomas, White, and Gigante are collectively referred to as "the DOC Supervisory Defendants."

19.     At all times relevant hereto, defendant Alan D. Aviles was the President and Chief Executive of HHC, acting in the capacity of agent, servant, and employee of defendant HHC, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Aviles, as President and Chief Executive of HHC, was responsible for the policy, practice, supervision, implementation, and conduct of all HHC matters and was responsible for the training, supervision, and conduct of all HHC personnel, including the HHC employees referenced herein. As President and Chief Executive, defendant Aviles was also responsible for the care, custody, and control of all patients housed in HHC facilities. As President and Chief Executive, defendant Aviles was provided on a regular basis with reports of

6

misconduct and harassment by HHC employees. In addition, at all relevant times, defendant Aviles was responsible for ensuring that HHC personnel obey the laws of the United States and of the State of New York. Defendant Aviles is sued in his individual capacity.

20.   At all times relevant hereto, defendant Lynda D. Curtis was the Executive Director of Bellevue Hospital, acting in the capacity of agent, servant, and employee of defendant HHC, within the scope of her employment as such, and acting under color of state law. On information and belief, defendant Curtis, as Executive Director, was responsible for the policy, practice, supervision, implementation, and conduct of all Bellevue matters and was responsible for the training, supervision, and conduct of all Bellevue personnel, including the Bellevue employees referenced herein. As Executive Director, defendant Curtis was also responsible for the care, custody, and control of all patients housed at Bellevue. As Executive Director, defendant Curtis was provided on a regular basis with reports of misconduct and harassment by HHC employees. In addition, at all relevant times, defendant Curtis was responsible for ensuring that HHC personnel obey the laws of the United States and of the State of New York. Defendant Curtis is sued in her individual capacity.

21.   Defendants Aviles and Curtis are collectively referred to as "the HHC Supervisory Defendants."

22.   At all times relevant hereto, defendants John Does 1 through 10, whose actual names Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" were employees of defendant City, acting in the capacity of agent, servant, and employee of defendant City, within the scope of their employment as such, and acting under color of state law. The Doe Defendants are sued in

their individual capacities.

23.     At all times relevant hereto, defendant Carl Wiley was an employee of the City of New York and/or HHC, acting in the capacity of agent, servant, and employee of defendant City and/or HHC, within the scope of his employment as such, and acting under color of state law.  Defendant Wiley is sued in his individual capacity.

24.     At all times relevant hereto, Correction Officer "John" Morales, was a DOC officer, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law.  Defendant Morales is sued in his individual capacity.

## STATEMENT OF FACTS

**The July 5, 2009 Sexual Assault of Ms. Williams**

25.     On June 10, 2009, Ms. Williams, then 23, was committed to the custody of the New York Department of Correction for a parole violation for leaving the state without prior approval.

26.     While incarcerated at Rikers Island, Ms. Williams was taken to the Prison Ward of Bellevue Hospital ("19 West") on or around June 27, 2009, where she was held for medical observation.

27.     On July 5, 2009, Ms. Williams remained under observation at 19 West.

28.     At approximately 12:10 a.m. on July 5, Ms. Williams went to a nurse's station to receive her nightly medication.  When she returned to her room, Carl Wiley was there. He offered to get Ms. Williams some juice to help her sleep.  He then returned with a cup of juice,

and left.

29.    At approximately 12:20 a.m., Wiley returned to Ms. Williams' room, and made several sexual comments to her, suggesting that he would "charge" her for bringing the juice. He also told Ms. Williams he had previously engaged in sexual misconduct with a patient in the psychiatric ward of Kings County Hospital, and had "almost" been fired for such misconduct. On information and belief, Defendants HHC, Aviles, and Curtis were aware or should have been aware of this previous incident.

30.    Shortly thereafter, Wiley again entered Ms. Williams' room, approached Ms. Williams, and pulled his penis out of his pants. Telling Ms. Williams she had to "pay" for his "services," Wiley grabbed Ms. Williams' head and forced his penis into her mouth. Ms. Williams resisted and attempted to push him away, unsuccessfully.

31.    This sexual assault was interrupted when a nurse walked by. Wiley abruptly left Ms. Williams' room, but returned at approximately 12:30 a.m. He then again pulled his penis out of his pants, and ordered Ms. Williams to get on her knees. Wiley pulled Ms. Williams by her hair, and forced her to perform oral sex upon him until he reached climax, and ejaculated in her mouth, on her face, and on her clothes.

32.    Ms. Williams immediately left her room and searched for someone to report the attack to, but had great difficulty locating any DOC staff – who were not at their assigned posts. Finally, she located a Corrections Officer Romero, and told him what happened. Romero directed her to return to her room, without any medical attention.

33.    Wiley then reentered Ms. Williams' room, and begged Ms. Williams not to report the incident. Frightened for her safety, Ms. Williams then ran from her room, screaming

for assistance.

34.    At approximately 2:00 a.m., Ms. Williams was finally taken to the Bellevue emergency room, where a "rape kit" was taken.

35.    The forensic evidence collected matched Wiley's DNA.

36.    On information and belief, DOC employees negligently and/or recklessly failed to "make tours of inspection at frequent intervals" and failed to maintain their proper posts throughout the ward on July 5, 2009, as required by DOC Rules and Regulations.  Had DOC staff been properly posted throughout 19 West, neither the initial assaults or Wiley's repeated returns to Ms. Williams' room would have been possible.  The failure of DOC staff to maintain their proper posts and ensure the security of vulnerable inmates was negligent and reflected deliberate indifference, in light of DOC's duty to protect the safety of these inmates, including Ms. Williams.  On information and belief, Defendants Horn, Thomas, and White were aware of DOC staff's failures to properly monitor the ward.

37.    In allowing Wiley to continue his employment with the City and/or HHC at a City and HHC-operated facility, and allowing him to have unsupervised conduct with vulnerable patients such as Ms. Williams, despite a record of sexual misconduct and DOC's duty to protect the vulnerable individuals in its custody, the City, HHC, and/or Defendants Aviles and Curtis were negligent and/or reckless in their retention and supervision of Wiley.

38.    In allowing Wiley to have unfettered access to vulnerable patients in DOC custody, despite his earlier sexual misconduct with a patient, the City was deliberately indifferent to the safety of inmates on 19 West, including Ms. Williams.

39.    On August 12, 2009, the New York County District Attorney charged

10

Wiley with one count of criminal sexual act in the first degree (N.Y. Penal Law 130.50(1)), and one count of criminal sexual act in the third degree (N.Y. Penal Law 130.40(1)).

40.    On March 10, 2010, Wiley pleaded guilty to a charge of a criminal sexual act in the third degree, an "E" felony, in New York County Supreme Court.  (Docket No. 2009NY054549).  In so doing, he admitted to engaging in oral sex with Ms. Williams, who was incapable of consent, pursuant to N.Y. Penal Law § 130.40.

41.    Wiley's actions throughout the early morning of July 5, 2009, constituted a crime of violence, committed because of Ms. Williams' gender, as defined by Chapter 8 of the New York City Administrative Code, and due, at least in part, to an animus based on Ms. Williams' gender.

42.    As a result of the assaults by Wiley, Ms. Williams suffered an abrasion on her lower lip, loss of dignity, and significant mental and emotional anguish, distress, and injury.

43.    Within ninety days after this incident alleged in this Complaint arose, a written notice of claim was served at the Comptroller's office at 1 Centre Street, New York, New York.

44.    At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

45.    This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

**The Harassment and Assault of Ms. Williams at MDC by Officer Morales**

46.    After Wiley sexually assaulted Ms. Williams at Bellevue, the Department

11

of Correction relocated Ms. Williams to a male housing unit at MDC, "10 West," on or around July 26, 2009.

47.     Immediately upon arriving at 10 West, Ms. Williams began to be sexually harassed by Corrections Officer Morales. On July 26, 2009, Morales made a lewd comment about Ms. Williams' buttocks. The next morning, he fondled Ms. Williams's buttocks while she was in her cell, wearing only her underwear.

48.     On or around August 17, 2009, Ms. Williams filed grievances with DOC and the Inspector General, informing them of these incidents, other similar sexual harassment and misconduct against her and another transgender inmate by Officer Morales, and sexual harassment and misconduct by other DPCofficers.

49.     DOES 1 through 5, employees of the Inspector General and/or DOC later interviewed Ms. Williams about her complaints, and she provided them with an account of the abuse she suffered. Upon information and belief, these employees communicated Ms. Williams' complaints to DOES 6 through 10, other DOC and/or City employees who had the authority and obligation to prevent harm to Ms. Williams. Upon information and belief, these complaints were communicated to Defendants Horn, Thomas, White, and Gigante.

50.     Based on Ms. Williams's detailed complaints about the conduct of Officer Morales and other MDC officers, as well as her report of sexual assault by Wiley at Bellevue, the City, Defendants Horn, Thomas, White, and Gigante, and DOES 1 through 10 were and should have been aware that transgender prisoners, and Ms. Williams, in particular, were at heightened risk for sexual assault by DOC officers, and Morales in particular. Yet in a show of deliberate indifference and negligent supervision, they took no or insufficient steps to protect Ms. Williams

from sexual assault by Officer Morales.

51.    To the contrary, DOC officials continued to assign Morales to one-on-one tasks with Ms. Williams, demonstrating a deliberate indifference and disregard for her safety.

52.    On the morning of September 25, 2009, Morales was assigned to escort Ms. Williams to the clinic.  On the way to the clinic, Morales made a comment insinuating he wanted to have sex with Ms. Williams.

53.    On the return from the clinic, while in the elevator, Morales suggested Ms. Williams and he engage in mutual masturbation.  His advances were interrupted by a third person entering the elevator.

54.    Morales then took Ms. Williams into a stairwell, where Morales began touching himself, and commanded Ms. Williams to perform oral sex upon him.  Ms. Williams refused, but Morales forced her to do so.  Morales ejaculated on Ms. Williams' face and clothes.

55.    After returning to her cell, extremely upset, Ms. Williams promptly reported the incident, and was taken to the MDC clinic and then Bellevue, where a rape kit was collected.

56.    The DNA collected matched that of Mr. Morales.

57.    Morales's assault was a crime of violence, committed because of Ms. Williams' gender, as defined by Chapter 8 of the New York City Administrative Code, and due, at least in part, to an animus based on Ms. Williams' gender.

58.    Ms. Williams was incapable of consenting to Morales's assault, pursuant to N.Y. Penal Law § 130.40.

59.     Within ninety days after these events, a written notice of claim was served at the Comptroller's office at 1 Centre Street, New York, New York.

60.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

61.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Eighth and Fourteenth Amendments
### (Against Defendant Wiley)

62.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

63.     By reason of the foregoing, and by sexually assaulting Ms. Williams, Defendant Wiley deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution to bodily integrity, and to be from cruel and unusual punishment.

64.     Wiley acted under pretense and color of state law and in his individual and official capacities and within the scope of his employment by the City and/or HHC.  Said acts by Wiley were beyond the scope of his jurisdiction, without authority of law, and in abuse of his powers.  Wiley acted willfully, knowingly, and with the specific intent to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

65.     As a direct and proximate result of the misconduct and abuse of authority

detailed above, Ms. Williams sustained the damages hereinbefore alleged.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Eighth and Fourteenth Amendments
### (Against Defendant Morales)

66.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

67.     By reason of the foregoing, and by sexually assaulting Ms. Williams, Defendant Morales deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution to bodily integrity, and to be from cruel and unusual punishment.

68.     Morales acted under pretense and color of state law and in his individual and official capacities and within the scope of his employment as a DOC officer.  Said acts by Morales were beyond the scope of his jurisdiction, without authority of law, and in abuse of his powers.  Morales acted willfully, knowingly, and with the specific intent to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

69.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Williams sustained the damages hereinbefore alleged.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Eighth and Fourteenth Amendments (Deliberate Indifference)
### (Against City)

70.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

15

71.     Defendant City, through DOC, acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to sexual harassment and misconduct by Wiley and other prison ward staff, and Officer Morales and other DOC staff against transgender inmates, including Ms. Williams, at the time Ms. Williams was sexually assaulted. This widespread tolerance of correction officer abuse of transgender prisoners constituted a municipal policy, practice, or custom and led to the assault of Ms. Williams.

72.     By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to sexual assault, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to bodily integrity and to be free from cruel and unusual punishment.

73.     As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Eighth and Fourteenth Amendments (Deliberate Indifference)
### (Against DOC Supervisory Defendants and DOES 1 through 10)

74.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

75.     The DOC Supervisory Defendants and DOES 1 through 10, acting under the pretense and color of law, were deliberately indifferent to Ms. Williams's health and safety, in that they knew of an excessive risk to her health and safety based upon Mr. Wiley's previous sexual misconduct and Ms. Williams' detailed reports of sexual harassment and misconduct by

16

Officer Morales and other DOC staff. The DOC Supervisory Defendants and DOES 1 through 10 disregarded this risk, as demonstrated by allowing Wiley to have contact with vulnerable patients, and by failing to take appropriate steps in response to Ms. Williams' complaints about Officer Morales.

76.    By their deliberate indifference, the Supervisory Defendants and DOES 1 through 10 have deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to bodily integrity and to be free from cruel and unusual punishment.

77.    As a direct and proximate result of this deliberate indifference, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Eighth and Fourteenth Amendments (Deliberate Indifference)
### (Against HHC)

78.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

79.    Defendant HHC, acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to sexual harassment and misconduct by Wiley and other prison ward staff, prior to and at the time Ms. Williams was sexually assaulted. This widespread tolerance of staff abuse of vulnerable patients constituted a municipal policy, practice, or custom and led to the assault of Ms. Williams.

80.    By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to sexual assault, defendant

HHC has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to bodily integrity and to be free from cruel and unusual punishment.

81.     As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM FOR RELIEF
**42 U.S.C. § 1983/Eighth and Fourteenth Amendments (Deliberate Indifference)**
**(Against HHC Supervisory Defendants)**

82.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

83.     The HHC Supervisory Defendants, acting under the pretense and color of law, were deliberately indifferent to Ms. Williams's health and safety, in that they knew of an excessive risk to her health and safety based upon Mr. Wiley's previous sexual misconduct. The HHC Supervisory Defendants disregarded this risk, as demonstrated by allowing Wiley to have one-on-one contact with vulnerable patients.

84.     By their deliberate indifference, the HHC Supervisory Defendants have deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to bodily integrity and to be free from cruel and unusual punishment.

85.     As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

18

## SEVENTH CLAIM FOR RELIEF
### New York City Administrative Code § 8-904
### (Against Defendants Wiley, Morales, City, and HHC)

86. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

87. In abusing their positions of authority and sexually assaulting Ms. Williams, Defendants Wiley and Morales each committed crimes of violence against her, motivated by gender, as that term is defined under Title 8 of the New York City Administrative Code.

88. Defendants City and/or the HHC, as employer of each of these defendants, are responsible for their wrongdoing under the doctrine of *respondeat superior*.

89. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM FOR RELIEF
### New York State Constitution, Art. 1, § 6
### (Against Defendants Wiley, Morales, City, and HHC)

90. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

91. By reason of the foregoing, and by sexually assaulting Ms. Williams, defendants Wiley and Morales deprived her of fundamental rights guaranteed to every New Yorker by Article 1, § 6 of the New York Constitution, without due process of law.

92. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as City and/or DOC officers, agents, or employees. Said acts by defendants were beyond the scope of

19

their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Ms. Williams of her constitutional rights secured by Article 1, § 6 of the New York Constitution.

93.     Defendants City and/or HHC, by their officers, agents, servants, and employees, were responsible for the deprivation of Ms. Williams's state constitutional rights. Defendants City and/or HHC, as employer of Wiley and Morales, are responsible for their wrongdoing under the doctrine of *respondeat superior*.

94.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## NINTH CLAIM FOR RELIEF
### Assault and Battery
### (Against Defendants Wiley, Morales, City, and HHC)

95.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

96.     In assaulting, battering, and threatening Ms. Williams, Defendants Wiley and Morales, acting in their capacities as City and/or HHC employees, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

97.     The assault and battery by these defendants was unnecessary and unwarranted in the performance of their duties.

98.     Defendant City and/or HHC, as employer of each of the defendants, areresponsible for their wrongdoings under the doctrine of *respondeat superior*.

99.     As a direct and proximate result of the misconduct and abuse of authority

detailed above, plaintiff sustained the damages hereinbefore alleged.

## TENTH CLAIM FOR RELIEF
### Negligence
### (Against Defendants City, HHC, DOC Supervisory Defendants, HHC Supervisory Defendants and DOES 1 through 10)

100.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

101.   Defendants City, HHC, the DOC Supervisory Defendants, the HHC Supervisory Defendants, and DOES 1 through 10, owed a duty of care to plaintiff to prevent the conduct alleged, because plaintiff was in their custody and, under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

102.   Defendant City and/or HHC, as employers of each of the individual defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

103.   As a direct and proximate result of the negligence detailed above, plaintiff sustained the damages hereinbefore alleged.

## TENTH CLAIM FOR RELIEF
### Negligent hiring/training/retention of
### Employment Services
### (Against Defendants City and HHC)

104.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

105.   Defendants City, through DOC, and HHC owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like

situation would probably result from the foregoing conduct.

106.   Upon information and belief, Defendants Wiley and Morales were unfit and incompetent for their positions.

107.   Upon information and belief, defendants City and/or HHC knew or should have known through the exercise of reasonable diligence that Wiley and Morales were potentially dangerous to transgender inmates, in general, and Ms. Williams in particular.

108.   Upon information and belief, defendants City and/or HHC's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

109.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants:

110.   Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Ms. Williams as a result of the events alleged herein.

111.   Punitive damages against the Individual Defendants in an amount to be determined at trial.

112.   An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

113.   Such other further relief as the Court may deem appropriate.

Dated: September 22, 2010
       New York, New York

_____
Ilann M. Maazel (IM - 5724)
Adam R. Pulver (*not yet admitted in SDNY*)
EMERY CELLI BRINCKERHOFF
& ABADY LLP
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

Anthony Cecutti (AC - 5867)
LAW OFFICES OF ANTHONY CECUTTI
100 Lafayette Street, Ste. 401
New York, New York 10013
(917) 741-1837